# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Charlene A. Williams, <br><br> Plaintiff, <br><br> v. <br><br> Rodenburg LLP d/b/a Rodenburg Law Firm, and Portfolio Recovery Associates, LLC <br><br> Defendants. | Case No. 17-cv-4962 (SRN/HB) <br><br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Charlene A. Williams's Second Motion to Amend the Complaint to Add Punitive Damages ("Second Motion to Amend") [Doc. No. 62] against both Defendants Rodenburg LLP ("Rodenburg") and Portfolio Recovery Associates, LLC ("PRA"). For the reasons stated below, the Court will grant the motion as to Rodenburg and deny the motion as to PRA.

## I.    Background

### A.    The Lawsuit

Plaintiff alleges that Rodenburg and PRA (collectively, "Defendants") violated the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692, *et seq.*, and the Minnesota garnishment statutes, codified at Minnesota Statutes § 571.71, *et seq. See generally* (Second Proposed Am. Compl., "SPAC" [Doc. No. 62-1].) In addition, Williams seeks relief for various alleged state law torts including interference with

1

Plaintiff's property interest in her garnished wages and invasion of privacy on the basis of intrusion upon seclusion. *See* (*id.* at 29–32.)

**B.** **Procedural Posture**

This is Plaintiff's second motion seeking to add a claim for punitive damages. *See* (Pl.'s Mot to Amend the Compl. to Add Claims for Punitive Damages [Doc. No. 24].) At a hearing on the first motion, the undersigned concluded that Rule 15 and not Minnesota Statutes § 549.191 controls the question of whether a motion seeking punitive damages should be granted. *See* (Sept. 4, 2018, Minute Entry [Doc. No. 56].) The Court denied Plaintiff's first motion without prejudice after having determined that Plaintiff's first proposed amended complaint was not sufficient under the Federal Rules because the allegations relating to the punitive damages claim were conclusory, Plaintiff having instead attempted to support the motion through a prime facie showing of the evidence under § 549.191. *See* (*id.*; *see also* Sept. 4, 2018, Text Only Order [Doc. No. 57].) The Court specifically stated that the pleading would need to comply with pleadings requirements under the Federal Rules, including that the proposed claim for punitive damages against both Defendants must be supported by factual allegations on the face of the proposed pleading. *See* (Sept. 4, 2018, Minute Entry; Sept. 4, 2018, Text Only Order.)

**C.** **The State Court Proceeding and Defendants' Initial Collection Attempts**

Plaintiff alleges PRA, "by and through Defendant Rodenburg," initiated a lawsuit in late 2011 in Minnesota state court against a "Charlene Williams" (a.k.a. "Charlene

Mumbo-Williams") who is not a party to this lawsuit.[1]  The judgment debtor was represented by attorney Daniel York. *See* (SPAC ¶¶ 9–17).  Plaintiff alleges the lawsuit commenced by Defendants was initiated via personal service on the judgment debtor at 11818 Crocus Street NW, Coon Rapids, Minnesota ("Crocus Address"). (*Id.* ¶ 11.) Plaintiff alleges that she (the Plaintiff) "has never lived at, never visited, never owned property at, never received mail at, and never leased property at the Crocus Address." (*Id.* ¶ 14.)

Default judgment in the state court proceeding was entered against the judgment debtor at the Crocus Address. (*Id.* ¶¶ 20–22.)  Phone numbers associated with the judgment debtor ended in xxx-xxx-5000 and xxx-xxx-3036. (*Id.* ¶ 49.)  As early as 2010, PRA was aware that the number xxx-xxx-5000 was not associated with Plaintiff. (*Id.* ¶ 53.)  Furthermore, Plaintiff alleges that based on information and belief, the number xxx-xxx-3036 belonged to the judgment debtor's husband. *See* (*id.* ¶¶ 54–56.)  Plaintiff also avers that she has never been associated with either of the phone numbers xxx-xxx-5000 or xxx-xxx-3036. (*Id.* ¶ 50.)

Plaintiff alleges that after Rodenburg[2] failed to collect the judgment from the judgment debtor, it "attempted to collect against any 'Charlene Williams' [it] could find." *See, e.g.*, (*id.* ¶¶ 58–81.)  Plaintiff asserts, for example, that Rodenburg attempted to

---

[1]  Because the state court proceeding ultimately resulted in a default judgment against the non-party "Charlene Williams," the Court refers to her as the "judgment debtor" to distinguish her from Plaintiff and the other individuals identified as "Charlene Williams" that are not the judgment debtor and are discussed herein.

[2]  The SPAC uses the term "Defendants," but the only Defendant that is alleged to have garnished wages from this "Charlene Williams" is Rodenburg. *See* (SPAC ¶¶ 63–65.)

collect from yet another "Charlene Williams" who was employed by Express Image in Little Canada, Minnesota. (*Id.* ¶ 62). Plaintiff suggests that Defendants identified that "Charlene Williams" in 2014 through a process called "skip-tracing"[3] by searching various commercial databases. (*Id.* ¶¶ 59, 61.) After attempting to collect from that "Charlene Williams," Rodenburg noted that it had attempted to garnish from a "Charlene Williams" that was not the judgment debtor. (*Id.* ¶ 63.) Rodenburg told PRA that it had attempted to collect from the wrong "Charlene Williams" and "PRA noted the reversal of funds in its account notes." (*Id.* ¶¶ 64–65.)

In March of 2013, Plaintiff discovered that the account that was the subject of the judgment debt was identified on her credit report as belonging to her. (*Id.* ¶ 66.) She called Equifax, which issued her credit report, and disputed ownership of the account. (*Id.* ¶ 67.) Equifax sent PRA an Automated Credit Dispute Verification ("ACDV") notification, telling PRA that Plaintiff was disputing ownership of the account. The ACDV listed an address for Williams on Meadowwood Drive, in Minneapolis. (*Id.*) In April of 2013, Plaintiff called PRA herself, again to dispute the ownership of the account. (*Id.* ¶ 70.) Plaintiff alleges PRA told Rodenburg of her ownership disputes. (*Id.* ¶ 71.)

Plaintiff next alleges that in 2014, Defendants—again through skip-tracing—identified an address of record for her at 2433 5th Ave. S., Apt. 1002, Minneapolis,

---

[3] "Skip-tracing is the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1040 n. 1 (9th Cir. 2012). In other words, skip-tracing utilizes "a variety of means to verify [the] debtor's contact information." *Freeland v. Fin. Recovery Servs., Inc.*, 790 F. Supp. 2d 991, 993 (D. Minn. 2011) (Leung, Mag. J.) (internal quotation marks omitted)

Minnesota 55404 (the "2433 Address"). (*Id.* ¶ 72.) Plaintiff asserts that "[d]river's licenses, tax documents, social security administration documents, lease agreements, and other documents verify that Plaintiff has resided at the 2433 Address" from the date of the state court proceeding through the initiation of the instant lawsuit. (*Id.* ¶ 73.) Plaintiff also avers that the 2014 skip-trace associated her with the phone number xxx-xxx-8071 and not with the numbers associated with the judgment debtor. (*Id.* ¶¶ 72, 74.)

### D.     The Disputed Garnishment

Plaintiff asserts that notes from Defendants' records in August 2016 show that Plaintiff disputed owing the judgment debt. (*Id.* ¶ 76.) Despite this, in November of 2016 Rodenburg on behalf of PRA again attempted to collect the judgment debt by serving Plaintiff's employer with a wage garnishment request. (*Id.* ¶ 77.) As part of this process, Defendants also attempted to serve Plaintiff herself at the Crocus Address. (*Id.* ¶ 78.) Plaintiff alleges that Defendants never personally served her until after her wages were garnished. (*Id.* ¶ 79.)

On December 16, 2016, before the garnishment was effected, Esquire Title contacted Rodenburg and informed Rodenburg that a property owned by a "Charlene Williams" at the Crocus Address was being sold and that Esquire Title had noticed a judgment of record against the Crocus Address. (*Id.* ¶ 90.) Plaintiff asserts the call records show that Esquire Title was attempting to confirm that the "Charlene Williams" that was selling the property at the Crocus Address was the judgment debtor. (*Id.* ¶ 91) As part of this inquiry, Esquire Title submitted information to Rodenburg that listed the seller's social security number as xxx-yy-**32. (*Id.* ¶ 94.) Plaintiff states that her social

security number is xxx-yy-**36. (*Id.* ¶ 95.)  Plaintiff contends this communication established that Plaintiff could not be the judgment debtor. (*Id.* ¶ 97.)

Plaintiff alleges that on December 21, 2016, Rodenburg noted that the seller of the Crocus Address and Plaintiff were different people. (*Id.* ¶ 99.)  Nevertheless, around that same time, Plaintiff's wages were garnished for the first of many times. (*Id.* ¶ 100.)  On December 21, 2016, Plaintiff contacted Rodenburg to inquire about the garnishment. (*Id.* ¶ 102.)  Rodenburg would not answer her inquiries because they stated she was being represented by York. (*Id.* ¶ 103.)  Plaintiff attempted to inform Rodenburg that she had never retained representation in this matter. (*Id.* ¶ 104.)  Over the next two days, Plaintiff engaged with Rodenburg multiple times. (*Id.* ¶ 105.)  In these communications she told Rodenburg that: (1) she did not owe the judgment debt; (2) she never lived at the Crocus Address; (3) she resided at the 2433 Address for the past six years; (4) she did not know York and was never represented by him in any legal matter; and (5) Rodenburg was garnishing wages from the wrong "Charlene Williams." (*Id.*)  At about the same time as her communications with Rodenburg, Plaintiff was able to locate and contact York, who confirmed that he never represented Plaintiff and that she was not the judgment debtor. (*Id.* ¶ 122.)

Plaintiff alleges that instead of investigating Plaintiff's claims, Rodenburg changed its files to match the information that Plaintiff had provided. (*Id.* ¶ 113.)  Specifically, she asserts Rodenburg removed any association the judgment debtor had with the Crocus Address and York. (*Id.*)

Having no luck with Rodenburg, Plaintiff filed an administrative complaint with the Minnesota Attorney General's Office. (*Id.* ¶ 123.) Plaintiff alleges that even though they had information in their records to the contrary, Defendants informed the Attorney General's Office that they were garnishing wages from the correct person. (*Id.* ¶ 127.) She asserts that Rodenburg provided the Attorney General's Office with the Crocus Address and the xxx-yy-**32 social security number of the judgment debtor to substantiate its claims that it was garnishing from the correct person, knowing full well that that information was not associated with Plaintiff. (*Id.* ¶¶ 127–28.)

Rodenburg continued to garnish Plaintiff's wages on a weekly basis until approximately February 13, 2017, when York contacted Rodenburg to inform Rodenburg that it was collecting from the wrong person. (*Id.* ¶¶ 121, 131.) Thereafter, the garnished wages were returned to Plaintiff and Defendants vacated the default judgment in the state court proceeding. (*Id.* ¶¶ 133–35.)

Based upon these facts, Plaintiff alleges Defendants "knowingly and relentlessly" garnished her wages and recklessly disregarded all the information Defendants had in their possession that established they were attempting to collect—and ultimately did collect—from the wrong person. (*Id.* ¶ 139.) In particular, Plaintiff asserts that based on the information available from the commercial databases, Defendants knew that the judgment debtor was "Charlene Mumbo-Williams," that the judgment debtor owned the property located at the Crocus Address, that Plaintiff was not "Charlene Mumbo-Williams," and that she was never associated with the Crocus Address. (*Id* ¶ 60.) Plaintiff also alleges that in their attempts to collect the judgment debt, Defendants

intentionally deceived her and third parties, including the Minnesota Attorney General's Office. (*Id.* ¶ 142.)

## II.     Discussion

### A.     Legal Standard

In a recent decision—and in conformity with other recent decisions in this District—the undersigned determined that Rule 15 and not Minnesota Statutes § 549.191 controls the adjudication of motions to amend. *See Shank v. Carleton Coll.*, No. 16-cv-1154 (ECT/HB), 2018 WL 4961472, at *4–5 (D. Minn. Oct. 15, 2018) (Bowbeer, Mag. J.).

Under Rule 15(a), a court should "freely give leave" to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a). Nonetheless, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Ultimately, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (alteration in original).

Although the Court concluded in *Shank* that the Federal Rules, not Minnesota Statutes § 549.191, establish the process for determining whether to grant a motion to amend to add a claim for punitive damages, Minnesota Statutes § 549.20, establishes the substantive legal standard for liability for punitive damages under Minnesota law. That section provides that punitive damages may be awarded "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20 subdiv. 1(a). The statute goes on to explain that

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceed to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceed to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20 subdiv. 1(b). This substantive standard necessarily informs the Court's consideration of whether Plaintiff's SPAC has alleged a plausible claim for punitive damages. *Shank,* 2018 WL 4961472, at *4.

## B.     Analysis

### 1.     Punitive Damages Against Rodenburg

Rodenburg argues that it did not act in deliberate disregard of Plaintiff's rights and that Plaintiff's proposed amendments are futile. *See* (Rodenburg, LLP Mem. of Law in Opp'n to Pl.'s Second Mot. to Amend the Compl. to Add Claims for Punitive Damages, "Rodenburg's Mem. in Opp'n" [Doc. No. 67 at 10–19.])  In support of its arguments, Rodenburg essentially argues that the factual record precludes a finding of deliberate disregard. *See* (*id.* at 10–14, 16–17.)  For example, Rodenburg asserts that Plaintiff "contort[s] the facts beyond recognition" and that the evidentiary record does not support her allegations. (*Id.* at 12; *see also id.* at 13–14.)  Rodenburg also contends Plaintiff's amendment would be futile.  In the alternative, Rodenburg argues that the Court lacks jurisdiction under *Rooker-Feldman*.  *See* (*id.* at 14–15, 17–18.)  None of Rodenburg's arguments are compelling.

Rodenburg's argument under the *Rooker-Feldman* doctrine are premised on the general principle that Plaintiff may not bring a lawsuit in federal court that challenges a state court judgment. *See, e.g.*, *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004)*.* Rodenburg argues that Plaintiff is challenging the state court judgment because her injuries arise from the state court judgment. *See* (Rodenburg's Mem. in Opp'n at 15.) Aside from the fact that nothing about this argument is unique to the proposed new claim for punitive damages, the argument misconstrues the nature of Plaintiff's claims. This case is not about the state court judgment, but about Defendants' conduct after the judgment was obtained.  Plaintiff does not seek by this lawsuit to have the Court overturn

or modify the state court judgment (which, the Court notes, has already been vacated). *See* (SPAC ¶ 211.) Rather, she claims that the actions taken to collect on the judgment violated not only the FDCPA but also the Minnesota garnishment statutes and Minnesota tort law. (*Id*.) Whether there is or is not a valid state court judgment may inform the question of whether Defendants deliberately disregarded Plaintiff's rights, but a valid judgment cannot shield Defendants from all liability regardless of the manner of their collection efforts. In short, Plaintiff's lawsuit does not ask the Court to determine whether the state court wrongfully decided the issues before it, and therefore *Rooker-Feldman* does not apply. *Cf. Simes*, 354 F.3d at 827.

As for Rodenburg's insistence that Plaintiff's allegations are contrary to the facts, it is improper for the Court to consider matters outside the pleadings when attempting to determine whether Plaintiff should be granted leave to amend her complaint. *See Arias v. Am. Family Mut. Ins.*, No. 13-cv-1681 (PJS/JJG), 2013 WL 12145854, at *2 (D. Minn. Oct. 28, 2013) (Graham, Mag. J.) (stating "[n]o matters outside the pleading may be considered" when conducting a futility analysis under Rules 12(b)(6) and 15). Rodenburg's concerns that the evidence does not support the allegations are noted, but such concerns are for consideration on summary judgment. *See Tholen v. Assist Am.*, No. 17-cv-3919 (DWF/SER), 2018 WL 3848434, at *3 (D. Minn. Aug. 13, 2018) (Rau, Mag. J.), *adopted by* Oct. 17, 2018 Order [Doc. No. 122] (Frank, J.).

Rodenburg's arguments that Plaintiff's allegations must fail as a matter of law are also unavailing. For example, Rodenburg cites *Freeland v. Fin. Recovery Servs., Inc.*, 790 F. Supp. 2d 991 (D. Minn. 2011) (Leung, Mag. J.), in support of its argument that

Williams's claims for punitive damages are foreclosed as a matter of law. *See* (Rodenburg's Mem. in Opp'n at 10–11.) *Freeland* is distinguishable over the instant case. In *Freeland*, the plaintiff sought to add a claim for punitive damages on the basis of the defendant calling the plaintiff approximately twenty times over a three-month period. 790 F. Supp. 2d at 993–94. Judge Leung concluded this conduct could not support a claim for punitive damages because it was reasonable for the defendant to verify the identity of the debtor and that these follow-up calls did not rise to the level of deliberate disregard of the plaintiff's right to privacy. *Id.* at 996–997. Here, Plaintiff alleges that Rodenburg failed to do *any* verification. Further, Plaintiff alleges Rodenburg not only failed to verify her identity but initiated and persisted in its collection efforts against her despite specific information in its possession that Plaintiff was not the judgment debtor. *See, e.g.*, (SPAC ¶¶ 60, 73, 87–96.) Thus, the Court does not find *Freeland* applicable or instructive here.

After careful review of Plaintiff's allegations against Rodenburg, the Court finds that if her allegations are assumed true—as they must be—they are sufficient to raise a plausible claim that Rodenburg acted in deliberate disregard of Plaintiff's rights when it garnished her wages. Plaintiff alleges that: (1) Rodenburg was aware that the phone numbers xxx-xxx-5000 and xxx-xxx-3036 that were associated with the judgment debtor were not associated with Plaintiff; (2) Rodenburg was aware that Plaintiff never owned or was otherwise associated with the Crocus Address; and (3) Rodenburg knew the judgment debtor's social security number of xx-yy-**32 was different from Plaintiff's social security number of xxx-yy-**36. *See* (SPAC ¶¶ 14, 49–50, 60, 94–95). In short,

Plaintiff asserts that the information that Rodenburg had—or had access to if it cared to look—establishes that Plaintiff never lived at the Crocus Address, had never been represented by York (the judgment debtor's attorney), was never associated with the phone numbers belonging to the judgment debtor, and, in view of the difference in social security numbers, *could not be* the judgment debtor. In addition, Plaintiff alleges, Rodenburg had unsuccessfully garnished the wages of at least one other "Charlene Williams" who was not the judgment debtor, and so Rodenburg knew that the judgment debtor was not the only "Charlene Williams" in the state of Minnesota. (*Id.* ¶¶ 61–65.)

Yet at no point did Rodenburg tap the brakes on its collection efforts despite all of the identified information that would tend to suggest or otherwise establish that Plaintiff was not the judgment debtor. *See, e.g.*, (*id.* ¶¶ 60, 63, 72, 76, 94–95, 97, 114–15.) Plaintiff plausibly alleges that Rodenburg knew it had in the past attempted to collect from the wrong person while pursuing this judgment debt, yet despite Plaintiff's repeated attempts to dispute ownership of the judgment debt, it continued its collection efforts without attempting to address the conflicting information and determine whether Plaintiff was in fact the same person as the judgment debtor. On the contrary, Plaintiff alleges, Rodenburg revised its records to incorporate what Plaintiff told Rodenburg about herself in an attempt to associate Plaintiff with the debt they knew she did not owe. *See* (*id.* ¶ 113.) Only after York intervened on Plaintiff's behalf did the garnishment stop. (*Id.* ¶¶ 121, 131.) Plaintiff also implies that if she herself was able to locate and contact York, Rodenburg could and should have done the same before garnishing her wages. *See* (*id.* ¶ 122.)

At bottom, Plaintiff's allegations are sufficient to state a claim that Rodenburg deliberately disregarded her rights under Minnesota law. Furthermore, Minnesota law permits recovery of punitive damages in cases alleging, as this one does, property-related torts and intrusion upon privacy if Plaintiff shows that there has been a deliberate or willful disregard of her rights. *See Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 427 (Minn. Ct. App. 1996) (citing Minnesota Supreme Court cases establishing that punitive damages are recoverable in cases involving interference with property interests); *Hooser v. Anderson*, No. A.15-1738, 2016 WL 1619464, at *2, 4 (Minn. Ct. App. Apr. 25, 2016) (punitive damages recoverable in action alleging invasion of privacy); *see also Rahaman v. Weber*, No. A03-882, 2005 WL 89413, at *5 (Minn. Ct. App. Jan. 18, 2005) (punitive damages recoverable in cases involving interference with wages and other monetary funds). Whether the evidence will eventually show that Rodenburg—as it argues—had a lawful justification to garnish Plaintiff's wages, and that its conduct did not meet the standard of deliberate disregard for Plaintiff's rights, is a matter to be addressed on summary judgment. *Accord Tholen*, 2018 WL 3848434, at *3; *Arias*, 2013 WL 12145854, at *2.

Plaintiff's allegations give rise to a reasonable inference that Rodenburg "deliberately proceed[ed] to act in conscious or intentional disregard of the high degree of probability" that it was interfering with Plaintiff's property rights in her wages and in her rights for privacy vis-à-vis the garnishment of those wages. *Accord Reid v. LVNV Funding LLC*, No. 2:14cv471, 2015 WL 926146, at *4 (D. Utah Mar. 4, 2015); *Pattin v. ARS Nat'l Servs, Inc.*, No. 06-cv-3077 (PJS/RLE), 2007 WL 7946043, at *4 (D. Minn.

14

May 7, 2007) (Erickson, Chief Mag. J.); *Rahaman*, 2005 WL 89413, at *5. While the evidence may ultimately refute the allegations or compel a different conclusion, the Court cannot conclude from the facts alleged that Plaintiff's claim that Rodenburg acted in deliberate disregard of her rights would be futile. As a result, the Court grants Plaintiff's motion as to Rodenburg.

## 2. Punitive Damages Against PRA

PRA argues that Plaintiff's allegations are not sufficient to plausibly claim that it deliberately disregarded her rights, and, further, that Plaintiff has not pleaded a sufficient connection between Rodenburg and PRA to warrant punitive damages under a theory of vicarious liability. *See generally* (PRA's Mem. of Law in Opp'n to Pl.'s Second Motion to Amend the Compl. to Add Claims for Punitive Damages, "PRA's Mem. in Opp'n" [Doc. No. 68].)

Plaintiff argues that PRA's arguments are not appropriate at the pleading stage. (Pl.'s Reply Br., "Reply" at [Doc. No. 71 at 13].) In support of her argument, Plaintiff cites *Nunn v. Noodles & Co.*, No. 9-cv-1286 (JNE/JJK), 2010 WL 3170763 (D. Minn. Aug. 6, 2010) (Keyes, Mag. J.). *See* (*Id.*) But *Nunn* is distinguishable for at least one very important reason. In the instant case, the Court is conducting its analysis of Plaintiff's SPAC under the Rule 15 standard. In *Nunn*, the Honorable Jeffrey J. Keyes, United States Magistrate Judge, was conducting an analysis under Minnesota Statutes § 549.191. *See* 2010 WL 3170763 at *2–3, 5–8. In that case, Judge Keyes determined that the plaintiff in *Nunn* had adduced sufficient evidence to make the statutorily required *prima facie* showing, but held that a *final* determination on the evidence was not

necessary or appropriate at that time, particularly because the *prima facie* showing is an

unrebutted one. *Id.* at *3. Furthermore, Judge Keyes concluded that the *prima facie*

showing was sufficient to establish direct liability for the conduct alleged and an analysis

of vicarious liability might not ultimately be necessary. *Id.* at *8 n.1. In other words,

Judge Keyes was not deciding the issue before him on the *pleadings* but on the *evidence*

filed in support. Plaintiff's suggestion that the Court can defer determining whether

Plaintiff has properly *pleaded* claims for punitive damages (either directly or vicariously)

is contrary to law. *See Iqbal*, 556 U.S. at 678.

### a.      Direct Liability for Punitive Damages

Turning to the SPAC, the Court finds that Plaintiff has not adequately pleaded

facts showing that PRA was sufficiently involved in the alleged wrongful garnishment to

support a plausible claim that PRA itself deliberately disregarded her rights. While

Plaintiff states that Rodenburg was acting on behalf of PRA, at no point does Plaintiff

allege facts that would demonstrate that PRA specifically acted to garnish Plaintiff's

wages or that it directed Rodenburg to do so; all of Plaintiff's allegations related to the

decision to garnish her wages in the face of the available information specifically

implicate only Rodenburg. *See, e.g.*, (SPAC ¶¶ 77, 90–99, 108–113). The specificity with

which Plaintiff's allegations of fact discuss Rodenburg is in stark contrast to the

allegations about PRA. *See, e.g.*, (SPAC ¶¶ 53–55 (allegations related to PRA's use of

the phone numbers xxx-xxx-5000 and xxx-xxx-3036 in an attempt to contact the

judgment debtor); ¶¶ 67–71 (alleging that Equifax and Plaintiff contacted PRA about the

disputed ownership of the judgment account and that PRA informed Rodenburg of the

dispute).) Ultimately, the allegations in the SPAC support a reasonable inference that PRA was attempting to identify the owner of the judgment debt and passed the information it received along to Rodenburg to aid Rodenburg in its collection efforts. A reasonable inference cannot be drawn from the allegations that PRA itself directly and deliberately disregarded Plaintiff's rights. That is, while Plaintiff's allegations plausibly allege that Rodenburg deliberately disregarded information that its intended course of conduct would result in a high probability of harm to Plaintiff, Plaintiff's allegations regarding PRA fall short of that threshold. *See* Minn. Stat. § 549.20, subdiv. 1; *Iqbal*, 556 U.S. at 678.

### b. Vicarious Liability for Punitive Damages

Plaintiff's claims also fail to state a claim for punitive damages under a theory of vicarious liability. Under Minnesota law, punitive damages may be alleged against principals for the conduct of its agents under only limited circumstances:

> (1) the principal authorized the doing and the manner of the act;
> (2) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit;
> (3) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment; or
> (4) the principal or a managerial agent of the principal, described in clause (3), ratified or approved the act while knowing of its character and probable consequences.

Minn. Stat. § 549.20 subdiv. 2(a). Plaintiff's SPAC does not plausibly allege either the requisite relationship or level of knowledge needed to allege punitive damages against PRA.

With respect to whether PRA authorized both "the doing and the manner" of the

garnishment under subdivision 2(a)(1), Plaintiff points to her allegations that PRA was acting "by and through Defendant Rodenburg" and that at "[a]ll relevant times, Defendant Rodenburg was acting as an agent for Defendant PRA and on behalf of Defendant PRA" to substantiate PRA's vicarious liability for Rodenburg's actions. *See* (Reply at 11; *see also, e.g.*, SPAC ¶¶ 10, 136.) But these conclusory statements provide insufficient factual enhancement to draw a reasonable inference that PRA authorized the *manner* in which Rodenburg carried out the garnishment. For example, Plaintiff pleaded that: (1) PRA was aware of discrepancies between information related to Plaintiff and information related to the judgment debtor; (2) Plaintiff called PRA to dispute ownership of the judgment debt; and (3) PRA informed Rodenburg of these facts. *See, e.g.*, (SPAC ¶¶ 67, 69–71.) But all this demonstrates is that PRA was in communication with Rodenburg. These facts do not plausibly allege that PRA authorized Rodenburg to proceed with the garnishment in the face of the information or that it authorized Rodenburg's specific conduct in how it handled the garnishment. Indeed, as stated above, all of the allegations regarding the wrongful garnishment are directed against Rodenburg specifically. *See, e.g.*, (SPAC ¶¶ 77, 90–113.)

Plaintiff also contends that PRA is vicariously liable for Rodenburg's conduct because Rodenburg represents PRA as PRA's attorney. *See* (Reply at 14–15; *see also* SPAC ¶ 138). But this by itself does not provide the factual enhancement necessary to establish that PRA authorized the *manner* in which Rodenburg conducted itself. Indeed, comment 2 of Rule 1.2 of the Minnesota Rules of Professional Conduct states in part "[c]lients normally defer to the special knowledge and skill of their lawyer with respect to

the means to be used to accomplish their objectives, particularly with respect to technical, legal, and tactical matters."

Plaintiff further argues that "PRA not only ratified Rodenburg's conduct, but acted in concert. For example, between February 1, 2018 and February 7, 2017, PRA contacted the Minnesota Attorney General's office and outright disputed Plaintiff's allegations." (Reply at 14.) But the SPAC does not mention this communication between PRA and the Attorney General's Office. As described above, the Court cannot incorporate matters outside the pleadings to evaluate whether leave to amend should be granted. *See Arias*, 2013 WL 12145854, at *2. Furthermore, even if this fact were included in the SPAC, the Court is not persuaded that it would permit a reasonable inference that PRA authorized both the doing and the manner of Rodenburg's garnishment of Plaintiff's wages.

Plaintiff's allegations likewise fail to support a claim for vicarious liability for punitive damages under the remainder of Minnesota Statutes § 549.20 subdivision 2(a). First, the SPAC is devoid of facts that suggest that Rodenburg was unfit or that PRA was aware of Rodenburg's unfitness. Thus, the SPAC fails to recite a facially plausible claim for punitive damages against PRA under Minnesota Statutes § 549.20 subdivision 2(a)(2).

Second, nothing in the SPAC supports a plausible claim that Rodenburg was "employed in a managerial capacity" for the purposes of Minnesota Statute § 549.20 subdivision 2(a)(3). "To determine managerial capacity, the critical inquiry regards the degree of discretion the employee possesses in making decisions that ultimately will

*determine corporate policy.*" *Tennant Co. v. Advance Mach. Co.*, 355 N.W.2d 720, 724 (Minn. Ct. App. 1984) (emphasis added). Plaintiff's SPAC is silent as to the "critical inquiry" regarding managerial capacity, and nothing suggests that Rodenburg had any authority at all to "establish policy and make planning level decisions" for PRA.[4] *See Workman v. Serrano*, No. A04-834, 2006 WL 771580, at *9 (Minn. Ct. App. Mar. 28, 2006) (describing the types of employee responsibilities that would give rise to a finding of vicarious liability under Minn. Stat. § 549.20 subdiv. 2(a)(3)); *Tennant Co.*, 335 N.W.2d at 724.

And for the same reasons that Plaintiff's SPAC does not plausibly allege vicarious liability for punitive damages against PRA under Minnesota Statutes § 549.20 subdiv. 2(a)(1), or § 549.20 subdiv. 2(a)(3), it cannot support a claim under Minnesota Statutes § 549.20 subdiv. 2(a)(4). The SPAC does not allege that PRA or a managing agent "ratified or approved" the garnishment of Plaintiff's wages "while knowing of its character and probable consequences. *See* Minn. Stat. § 549.20 subdiv. 2(a)(4).

In short, Plaintiff's SPAC does not plead a plausible claim that PRA deliberately

---

[4] Because Williams's allegations against PRA do not plausibly allege the requisite "managerial capacity" to satisfy Minnesota Statutes 549.20 subdiv. 2(a)(3), the Court need not consider whether Rodenburg was "employed" by PRA as that subdivision also requires. Rodenburg was PRA's outside counsel, not its employee, and nothing in the SPAC alleges otherwise. *See* (SPAC ¶ 138.) Neither party discussed, and the Court has not found Minnesota case law that explicitly addresses, whether the use of the verb "employed" in subdivision 2(a)(3) could apply to relationships other than an actual employee-employer relationship. But regardless of whether it could be argued that "employed" is used more broadly in that context and could extend to the relationship between a client and its outside counsel, Plaintiff failed to plead sufficient facts to plausibly allege that Rodenburg was "in a managerial capacity with authority to establish policy and make planning level decisions" for PRA.

disregard her rights, either directly or vicariously through Rodenburg's alleged conduct. Consequently, Plaintiff's motion is denied as to PRA.

## III.    Conclusion

Accordingly, based on the foregoing, and all the files, records, and proceedings herein **IT IS HEREBY ORDERED** that:

1. Plaintiff Charlene A. Williams's Second Motion to Amend the Complaint to Add Punitive Damages [Doc. No. 62] is **GRANTED** as to Defendant Rodenburg LLP and **DENIED** as to Defendant Portfolio Recovery Associates, LLC; and

2. Plaintiff must file an amended complaint on or before **seven (7)** days from the date of this Order that is identical to her Second Proposed Amended Complaint [Doc. No. 62-1] except that it must allege punitive damages against Defendant Rodenburg LLP only.


Dated: November 6, 2018

 s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge